IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**PATRICK ALLEN SPARKS**,

Petitioner,

v.

**GARRETT LANEY,**

Respondent.

Case No. 6:19-cv-01262-IM

**OPINION AND ORDER**

**IMMERGUT, District Judge.**

Petitioner Patrick Allen Sparks ("Petitioner"), an individual in custody at Oregon State Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, alleging that the state court revoked his parole and sentenced him to three consecutive custodial terms in violation of the Due Process Clause of the Fourteenth Amendment. For the reasons that follow, Petitioner's Habeas Petition (ECF No. 2) is DENIED, and this proceeding is DISMISSED, with prejudice.

PAGE 1 – OPINION AND ORDER

**BACKGROUND**

On August 16, 2014, Petitioner pleaded guilty in the Multnomah County Circuit Court to one count of Assault in the Fourth Degree and one count of Attempted Assault in the Second Degree, each constituting domestic violence. Resp't Exs. (ECF No. 20), Ex. 102. The same day, Petitioner pleaded guilty to two counts of Tampering with a Witness in a separate criminal case. Resp't Ex. 103. Pursuant to the terms of a plea agreement, the trial court sentenced Petitioner to a thirty-month custodial term on the assault conviction, and a sixty-month term of probation on each of the other three convictions. Resp't Ex. 101 at 13–14, 17–18. The trial court imposed general and special conditions on each probatory term, including a condition that forbade Petitioner from having direct or indirect contact with the victim or her children. *Id.*

Petitioner served his prison term, and was released from custody on March 8, 2016. Resp't Ex. 104 ("Tr.") at 4. Less than a week later, on March 14, 2016, the trial court issued notices ordering Petitioner to appear for a hearing on allegations that he had violated his probation in both of his criminal cases. Resp't Ex. 110 at 60, 61. The notices also appointed counsel, and instructed Petitioner immediately to contact his attorney. *Id.* The notices did not set forth the specific allegations against Petitioner, but advised that "[a] copy of the allegations and discovery" would be provided through counsel. *Id.*

On March 15, 2020, probation officer Jennifer Brissenden ("Brissenden") filed a violation report detailing the allegations against Petitioner.[1] The report alleged that Petitioner violated three separate general and special conditions of his probation: that he have no contact with the victim,

---

[1] At oral argument before the Oregon Supreme Court, Petitioner's appellate counsel confirmed that Petitioner received a copy of the report prior to the probation violation hearing. *State v. Sparks*, 364 Or. 696, 704 (2019).

that he abide by the directives of his supervising officer, and that he abstain from the use or possession of controlled substances. Resp't Ex. 110 at 62–64. With respect to the no-contact condition, the report specified that Petitioner "repeatedly contacted and attempted to contact his victim" by telephone and by mail, and that the victim had "provided [Brissenden with] . . . seven different letters that she received from [Petitioner] while he was in custody." *Id.* at 62. The report further explained that the letters each bore a different postmark date between November 20, 2014 and February 1, 2015, and that each contained credible threats to the victim and her family. *Id.* at 62–63. In light of the letters and their contents, "as well as [Petitioner's] behaviors over the three days he was out of custody," the report concluded that Petitioner "ha[d] no intention of abiding by the terms of his probation." *Id.* at 64. Accordingly, Brissenden recommended revocation of his probation and the imposition of a thirty-six-month custodial term on all three counts. *Id.*

The trial court held a hearing on March 24, 2016. Tr. 1. After recounting the underlying crimes, the trial court summarized the allegations against Petitioner as follows:

> The probation violation report . . . dated March 15th of this year alleges that [Petitioner] violated his probation for several different -- in several different respects.
>
> First of all, in having contact with . . . the victim in these cases, in violation of the conditions of probation. Secondly, in failing to abide by the PO's directions with respect to being within 1,000 of [the victim's] home, school, work. And lastly, that he used illegal drugs in violation of the conditions of probation.

Tr. 4. Through counsel, Petitioner denied that he had violated the conditions of his probation by being within 1,000 feet of the victim's home, school, or workplace, but agreed to "stipulate factually that he did write the letters and send the letters . . . before [the court]." Tr. 4–5. Upon further questioning, Petitioner expressly confirmed that he had written each of the seven letters as

PAGE 3 – OPINION AND ORDER

alleged in the violation report,[2] and also admitted to using methamphetamine shortly after his release. Tr. 6.

The State then presented its evidence against Petitioner.[3] Following argument from both parties, the trial court ruled on the record, finding Petitioner "violated his probation in these two case numbers in these three counts for sending the nine letters . . . to the victim" and "for use of illegal substances, the methamphetamine." Tr. 52–53. Petitioner proceeded to sentencing the same day.

The State recommended that the trial court revoke Petitioner's probation on all three counts in favor of three consecutive thirty-six-month custodial terms. Tr. 55. Defense counsel objected:

> [DEFENSE COUNSEL]: Yeah, very quickly, as far as three consecutive sentences, I don't think the court has authority since there's only two violations here. The most the court can impose is two --
>
> THE COURT: Well --
>
> [DEFENSE COUNSEL]: -- consecutive --
>
> THE COURT: -- I found nine violations of the court's order that he not have contact with the victim. Exhibit 5 are nine separate letters that constitute contact or attempted contact.
>
> [DEFENSE COUNSEL]: Okay.
>
> THE COURT: So, as a matter of fact, I find nine separate violations of that.
>
> [DEFENSE COUNSEL]: Okay. I will withdraw that argument --

---

[2] During the hearing, the victim testified that Petitioner had sent her nine letters while in custody rather than seven, and that each included overt threats to her safety and to that of her family. Tr. 28, 30. All nine letters were entered into evidence without objection. Tr. 28–29.

[3] The remainder of the hearing primarily centered on the contested allegation that Petitioner had disobeyed his probation officer by coming within 1,000 feet of the victim's home, school, or workplace. The trial court ultimately found Petitioner's probation officer had lacked authority to impose such a condition, but that allegation and its disposition is not at issue in this proceeding.

PAGE 4 – OPINION AND ORDER

Tr. 57–58. Petitioner then addressed the court, attributing the violative conduct to unresolved mental health issues and urging the imposition of lesser sanctions than those recommended by the State. Tr. 64-65.

The trial court ultimately revoked Petitioner's probation on all three counts, and explained its reasons for doing so:

> [W]ith respect to the authority of the court to impose multiple violation sanctions, I find that Exhibit 5 constitutes nine separate violations of [Petitioner's] probation on all three of these counts in these two case numbers.
>
> I also find that the defendant -- I've previously noted on the record the defendant used methamphetamine in violation of the law.
>
> The combination of those violations that I have found justify revocation of his probation on all three counts. Separately even if the -- if there had been no violation with respect to the methamphetamine use, the contact with the victim as evidenced by Exhibit 5 nine times, that alone without regard to the methamphetamine violation constitutes grounds for revocation of all counts.

Tr. 65–66. Consistent with the State's recommendation, the trial court imposed three thirty-six-month custodial terms to be served consecutively, for a total term of 108 months. Tr. 66-69. At the hearing's close, defense counsel renewed his objection to the imposition of three consecutive terms of incarceration, stating "that the nine letters were alleged as a single violation and I would assert that they are one continuing course of conduct given my client's mental state." Tr. 70.

Petitioner appealed, and the Oregon Court of Appeals affirmed without opinion. *State v. Sparks*, 289 Or. App. 642, (2017). The Oregon Supreme Court allowed review. *State v. Sparks*, 362 Or. 794 (2018)

On review before the Oregon Supreme Court, Petitioner argued that OAR 213-012-0040(2)(b)[4] requires a sentencing court to "find a separate supervision violation for each

---

[4] OAR 213-012-0040 provides, in relevant part:

PAGE 5 – OPINION AND ORDER

incarceration sanction that it imposes consecutively," and that the nine letters sent to the victim could not constitute multiple violations where "the state allege[d] a single violation of a condition of probation[.]" Resp't Ex. 110 at 11–13. Petitioner concluded that because the trial court found that he had committed only two of the three violations alleged, the trial court "could impose only two consecutive revocation sanctions" under OAR 213-012-0040(2)(b), and thus erred in imposing three. *Id.* at 13. The State opposed Petitioner's interpretation of OAR 213-012-0040(2)(b), and offered several counterarguments in response.

The Oregon Supreme Court declined to resolve the parties' dispute as to the proper interpretation of OAR 213-012-0040(2)(b), explaining that it need not do so "if the trial court properly found the [three or more] violations that [Petitioner] contends it needed to find." *State v. Sparks*, 364 Or.696, 703 (2019). The Court then turned to Petitioner's contention that the trial court lacked authority to find multiple violations of the no-contact condition, summarizing his argument as follows:

> [Petitioner] argues that the trial court lacked authority [under the Due Process Clause of the Fourteenth Amendment] to find multiple violations of the no-contact provision because the state alleged only one violation of that condition. . . . He asserts that, "[b]ecause due process requires that a defendant receive complete and timely notice of alleged probation violations before a probation hearing, a trial court may not find violations that the state has not alleged in a properly served show-cause document." He further asserts that, in this case, the state provided notice that it was alleging only three probation violations," and the trial court found that the

---

(2) When an offender is serving multiple terms of probationary supervision, the sentencing judge may impose revocation sanctions for supervision violations as provided by OAR 213-010-0002 for the violation of each separate term of probationary supervision.

\*\*\*\*

(b) If more than one term of probationary supervision is revoked for separate supervision violations, the sentencing judge may impose the incarceration sanctions concurrently or consecutively.

PAGE 6 – OPINION AND ORDER

state had failed to prove one of them, leaving only two. Therefore, according to [Petitioner], "the law permitted [the trial court] to consecutively impose no more than two revocation sanctions."

*Id.* at 703–04.

The Court rejected Petitioner's claim "that he did not have notice that the state was alleging multiple violations of the no-contact condition," finding that Petitioner had received a copy of the violation report prior to the revocation hearing, and that the report expressly alleged that he had written "seven letters from prison between November 20, 2014 and February 1, 2015." *Id.* at 704. Despite Petitioner's insistence that the state had asserted the allegations concerning the no-contact condition as a single violation by listing them under a single subsection in the violation report, the Court determined that the allegations were "specific enough to put [Petitioner] on notice that the state was alleging separate violations, because they alleged that [he] had 'repeatedly' contacted [the victim] and had sent 'seven different letters' over the course of several months." *Id.* at 705–06. The Court thus determined that even if due process required notice as Petitioner alleged, the record demonstrated that he had received such notice. *Id.* at 706. Accordingly, the Oregon Supreme Court held that even under Petitioner's interpretation of OAR 213-012-0040(2)(b), the trial court possessed the requisite authority to impose three consecutive revocation sanctions because it expressly found Petitioner guilty of ten separate probation violations. *Id* at 703, 706.

On August 12, 2019, Petitioner filed a Petition for Writ of Habeas Corpus in this Court, alleging that "he was denied due process when the State illegally convicted, revoked his probation, and sentenced him." Pet. (ECF No. 2), at 6. Petitioner primarily relies on arguments taken from his brief on the merits to the Oregon Supreme Court, which he "incorporates here as if fully set forth as his claims for relief in this matter." *Id.* Respondent Garrett Laney ("Respondent") moves to deny habeas relief on the grounds that the Oregon Supreme Court made reasonable factual

PAGE 7 – OPINION AND ORDER

determinations in light of the record before it, and did not unreasonably apply federal law in rejecting Petitioner's claim. Resp't's Resp. to Pet. (ECF No. 18), at 5.

## DISCUSSION

### I.    Legal Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA") prohibits relitigation of any claim adjudicated on the merits in state court unless such adjudication resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). A federal habeas court must apply a presumption of correctness to the state court's findings of fact, and the habeas petitioner bears the burden of rebutting that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In other words, AEPDA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands the state-court decision be given the benefits of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotations and citations omitted).

A state-court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law occurs if the state court correctly identifies the governing legal principle but misapplies that principle to the facts of the case. *Id.* at 407. The "unreasonable application" clause requires the state court's decision to be

more than merely erroneous or incorrect. *Id.* at 410. Rather, the state court's application of clearly established federal law must be objectively unreasonable. *Id.* at 409.

A federal habeas court may not disturb a state-court decision on factual grounds unless the state court's decision was based on an unreasonable determination of the facts in light of the evidence before it. 28 U.S.C. § 2254(d)(2). Under the "unreasonable determination" clause, "[t]he question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The Ninth Circuit has clarified that when a petitioner challenges the substance of a state court's findings, the federal habeas court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.), *cert denied*, 543 U.S. 1038 (2004).

## II.     Analysis

Petitioner renews the due process arguments he presented in state court, insisting that he was "deprived . . . of adequate notice as to the punishment that he would be exposed to" if found guilty of "more than the three [probation] violations alleged." Pet'r's Mem. (ECF No. 21), at 7. Petitioner argues that this Court should not defer to the Oregon Supreme Court's decision denying relief because the Court failed to "provide any appreciable reasoning as to [his] due process claim to support its conclusion." *Id.* at 13. However, Petitioner fails to demonstrate that the Oregon Supreme Court's decision rested on an unreasonable determination of the facts or involved an unreasonable application of federal law.

Contrary to Petitioner's assertion that the Oregon Supreme Court's decision includes no "appreciable reasoning" with respect to his due process claim, the Court's decision is well-

PAGE 9 – OPINION AND ORDER

supported by the record. Petitioner claims that he received notice as to only three violations, but the record reflects that he received a copy of the violation report prior to the hearing, that the violation report expressly alleged that he "repeatedly contacted and attempted to contact his victim" by mail and by phone, and that the victim had provided seven different letters Petitioner sent to her while he was in custody. Resp't Ex. 110 at 62–63. Moreover, the record does not support Petitioner's assertion that the State "confirmed that it was purs[uing] . . . [only] three alleged violations" at the start of the revocation hearing. Rather, the hearing transcript reveals that the trial court began the hearing by explaining that Petitioner had violated his probation "in several different respects" with regard to three specific conditions of his probation, but made no comments that suggested the State intended to pursue only three violations of those conditions. Tr. 4. Indeed, the trial court explicitly asked Petitioner whether he would like to admit or deny that he had sent seven separate letters to the victim. Tr. 6. This Court therefore cannot find that the Oregon Supreme Court's finding that the State properly alleged multiple violations of the no-contact condition was objectively unreasonable.

Petitioner also contends that the Oregon Supreme Court's decision is contrary to clearly established federal law because it did not apply the Rule of Lenity in favor of his interpretation of OAR 213-012-0040(2)(b). Pet'r's Mem. at 12–13. However, as explained in its opinion, the Oregon Supreme Court did not address the parties' competing interpretations of OAR 213-012-0040(2)(b), and therefore the Rule of Lenity is inapplicable.

Petitioner thus has failed to establish that the decision of the Oregon Supreme Court was based on an unreasonable determination of the facts or was contrary to clearly established federal law. Accordingly, the Oregon Supreme Court's decision is entitled to deference, and habeas relief is denied.

## CONCLUSION

Based on the foregoing, the Petition for Writ of Habeas Corpus (ECF No. 2) is DENIED, and this proceeding is DISMISSED, with prejudice. Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore this Court DENIES a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

DATED this  2nd   day of January, 2021.

                                              Karin J. Immergut
                                              United States District Judge